**TOSTRUD LAW GROUP, P.C.**
JON A. TOSTRUD
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Telephone: (310) 278-2600
Facsimile: (310) 278-2640
jtostrud@tostrudlaw.com

**GAINEY McKENNA & EGLESTON**
THOMAS J. MCKENNA
GREGORY M. EGLESTON
440 Park Avenue South, 5th Floor
New York, New York 10016
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVYN KLEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CU BANCORP, ROBERTO E. BARRAGAN, CHARLES R. BEAUREGARD, KENNETH J. COSGROVE, DAVID C. HOLMAN, K. BRIAN HORTON, ERIC S. KENTOR, JEFFREY LEITZINGER, DAVID I. RAINER, ROY A. SALTER, DANIEL F. SELLECK, CHARLES H. SWEETMAN, KAVEH VARJAVAND, ERIC S. KENTOR, AND PACWEST BANCORP,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Melvyn Klein ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE AND SUMMARY OF THE ACTION**

1.      Plaintiff brings this action, individually, as a public stockholder of CU Bancorp ("CU Bancorp" or the "Company") against the members of CU Bancorp's Board of Directors (the "Board" or the "Individual Defendants") and CU Bancorp for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9"), and on behalf of himself and a class of public stockholders of CU Bancorp against the Individual Defendants for breach of fiduciary duty.

2.      On May 26, 2017, Defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Transaction.

3.      On April 6, 2017, the Company announced that it had entered into a definitive agreement and plan of merger (the "Agreement") whereby PacWest Bancorp ("PacWest") will acquire CU Bancorp in a transaction valued at approximately $705 million.   Under terms of the Agreement, CU Bancorp shareholders will receive 0.5308 shares of PacWest common stock and $12.00 in cash for each share of CU Bancorp.   Based on PacWest's April 5, 2017 closing price of $51.72, the total value of the merger consideration is $39.45 per CU Bancorp share.  The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes and CU Bancorp shareholders are not expected to recognize gain or loss to the extent of the stock consideration received.

4.      The Registration Statement omits material information with respect the Transaction.  For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws.  Accordingly, Plaintiff seeks to enjoin the Transaction or recover damages resulting from the Individual

1

1  Defendants' violations of these laws.  Judicial intervention is warranted here to
2  rectify existing and future irreparable harm to the Company's stockholders.

3  ## JURISDICTION AND VENUE

4      5.      This Court has jurisdiction over the claims asserted herein for
5  violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9
6  promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. §
7  78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8      6.      This Court has jurisdiction over Defendants because each defendant is
9  either a corporation that conducts business in and maintains operations within this
10  District, or is an individual with sufficient minimum contacts with this District so as
11  to make the exercise of jurisdiction by this Court permissible under traditional
12  notions of fair play and substantial justice.

13      7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because
14  Plaintiff's claims arose in this District, where a substantial portion of the actionable
15  conduct took place, where most of the documents are electronically stored, and
16  where the evidence exists.  CU Bancorp is headquartered in this District.

17  ## THE PARTIES

18      8.      ***Plaintiff Melvyn Klein*** is, and has been at all times relevant hereto, a
19  stockholder of CU Bancorp.  *See* attached certification.

20      9.      ***Defendant CU Bancorp*** is a corporation organized and existing under
21  the laws of the State of California.  It maintains its principal executive offices at
22  818 W. 7th Street, Suite 220, Los Angeles, California 90017.

23      10.     ***Defendant Roberto E. Barragan*** ("Barragan") serves as a director on
24  the Company's Board of Directors (the "Board").

25      11.     ***Defendant Charles R. Beauregard*** ("Beauregard") serves as a
26  director.

27      12.     ***Defendant Kenneth J. Cosgrove*** ("Cosgrove") serves as the Vice
28  Chairman of the Company and a director.

13.    ***Defendant David C. Holman*** ("Holman") serves as a lead director.

14.    ***Defendant K. Brian Horton*** ("Horton") serves as the President of the Company and as a director.

15.    ***Defendant Jeffrey Leitzinger*** ("Leitzinger") serves as a director.

16.    ***Defendant David I. Rainer*** ("Rainer") serves as the Chief Executive Officer ("CEO") of the Company and as the Chairman of the Board.

17.    ***Defendant Roy A. Salter*** ("Salter") serves as a director.

18.    ***Defendant Daniel F. Selleck*** ("Selleck") serves as a director.

19.    ***Defendant Charles H. Sweetman*** ("Sweetman") serves as a director.

20.    ***Defendant Kaveh Varjavand*** ("Varjavand") serves as a director.

21.    ***Defendant Eric S. Kentor*** ("Kentor") is a director of CU Bancorp.

22.    Defendants Barragan, Beauregard, Cosgrove, Holman, Horton, Leitzinger, Rainer, Salter, Selleck, Sweetman, Varjavand, and Kentor are collectively referred to herein as the "Individual Defendants."

23.    Defendants CU Bancorp and the Individual Defendants are collectively referred to as the "Defendants."

24.    ***Defendant PacWest Bancorp*** operates as the holding company for Pacific Western Bank, a state chartered bank that provides commercial banking products and services.

25.    Pacific Western Bank, a non-party, is the principal operating subsidiary of PacWest Bancorp.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff brings his claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own CU Bancorp common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

3

27.    Plaintiff's claim is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

28.    The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of April 4, 2017, there were approximately 17,834,183 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by CU Bancorp or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

29.    Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, among *inter alia*:

(a)    Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct;

(b)    Whether Defendants have disclosed and will disclose all material facts about the Transaction to stockholders;

(c)    Have the Individual Defendants breached their fiduciary duties of loyalty and/or care with respect to Plaintiff and the other members of the Class in connection with the Merger; and

(e)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

30.    Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

31.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be

1    encountered in the management of this action that would preclude its maintenance
2    as a class action.

3        32.    Defendants have acted on grounds generally applicable to the Class
4    with respect to the matters complained of herein, thereby making appropriate the
5    relief sought herein with respect to the Class as a whole.

6                          **SUBSTANTIVE ALLEGATIONS**

7    **The Company**

8        33.    CU Bancorp, headquartered in Downtown Los Angeles, California, is
9    a bank holding company registered under the Bank Holding Company Act of 1956,
10   as amended, and is also a bank holding company within the meaning of Section
11   1280 of the California Financial Code.   The Company's principal business is to
12   serve as the holding company for the Company's bank subsidiary, California
13   United Bank, which is referred to as "CUB" or the "Bank".

14       34.    CU Bancorp was incorporated as a California corporation on
15   November 16, 2011, and became the holding company for California United Bank
16   on July 31, 2012 by acquiring all the voting stock of California United Bank.  The
17   creation of the bank holding company for the Bank was approved by the
18   shareholders of the Bank on July 23, 2012.

19       35.    California United Bank was incorporated on September 30, 2004,
20   under the laws of the State of California and commenced operations on May 23,
21   2005.   The Bank is authorized to engage in the general commercial banking
22   business and its deposits are insured by the FDIC up to the applicable limits of the
23   law.  CUB is a California state-chartered banking corporation and is not a member
24   of the Federal Reserve System.

25       36.    At year-end 2016, the Company had consolidated total assets of $3.0
26   billion, total loan balances of $2.0 billion, and total deposits of $2.6 billion.

27

28

37.   On April 6, 2017, the Company announced the signing of a definitive agreement and plan of merger whereby PacWest will acquire CU Bancorp in a transaction valued at approximately $705 million

38.   The press release stated:

LOS ANGELES, CA, April 6, 2017 — PacWest Bancorp (Nasdaq: PACW) ("PacWest") and CU Bancorp (Nasdaq: CUNB) ("CU Bancorp") today announced the signing of a definitive agreement and plan of merger (the "Agreement") whereby PacWest will acquire CU Bancorp in a transaction valued at approximately $705 million.

CU Bancorp, headquartered in Los Angeles, CA, is the parent of California United Bank, a California state-chartered non-member bank, with approximately $3.0 billion in assets and nine branches located in Los Angeles, Orange, Ventura and San Bernardino counties at December 31, 2016. In connection with the transaction, California United Bank will be merged into Pacific Western Bank, the principal operating subsidiary of PacWest Bancorp.

The transaction, which was approved by the PacWest and CU Bancorp boards of directors, is expected to close in the fourth quarter of 2017 and is subject to customary closing conditions, including obtaining approval by CU Bancorp's shareholders and bank regulatory authorities.

As of December 31, 2016, on a pro forma consolidated basis, the combined company would have approximately $25.0 billion in assets and 87 branches, prior to contemplated consolidations.

Under terms of the Agreement, CU Bancorp shareholders will receive 0.5308 shares of PacWest common stock and $12.00 in cash for each share of CU Bancorp. Based on PacWest's April 5, 2017 closing price of $51.72, the total value of the merger consideration is $39.45 per CU Bancorp share. The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes and CU Bancorp shareholders are not expected to recognize gain or loss to the extent of the stock consideration received.

Matt Wagner, CEO of PacWest Bancorp, commented, "We have long admired the Southern California franchise the CU Bancorp team has built over the years. We are confident the partnership announced today will create value for both PacWest and CU Bancorp shareholders."

David Rainer, Chairman and CEO of CU Bancorp, remarked, "We believe merging with PacWest, one of the top-performing banks in the United States with demonstrated integration experience, provides the best path toward long-term value creation for our shareholders. The shared community banking philosophies and core technology platforms will ensure a seamless transition for our loyal and valued clients."

In connection with the announcement of this transaction, an investor presentation will be filed with the SEC and is available on the websites of both PacWest and CU Bancorp. Keefe, Bruyette & Woods acted as financial advisor to CU Bancorp and delivered a fairness opinion to its Board of Directors. Manatt, Phelps & Philips, LLP served as legal counsel to CU Bancorp. Sandler O'Neill + Partners, LP acted as financial advisor to PacWest. Sullivan & Cromwell LLP served as legal counsel to PacWest.

39.     The terms of the Agreement substantially favor PacWest and are calculated to stop other suitors from making competing offers.   For example, Defendants have ensured that another potential suitor will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Agreement that stops Defendants from soliciting other proposals and constrains their ability to negotiate with other potential buyers who wish to submit unsolicited alternative proposals.  Section 5.08 of the Agreement states:

The Company agrees that neither it nor any of its Subsidiaries nor any of their respective officers, directors, employees and Affiliates shall, and that it shall direct and use its reasonable best efforts to cause its and its Subsidiaries' agents and representatives (including any financial advisor, attorney or accountant retained by it or acting on its behalf) not to, directly or indirectly, initiate, solicit, encourage or otherwise facilitate any inquiries or the making of any proposal or offer with respect to an Acquisition Proposal. The Company further

agrees that neither it nor any of its Subsidiaries nor any of their respective officers, directors, employees and Affiliates shall, and that it shall direct and use its reasonable best efforts to cause its agents and representatives (including any financial advisor, attorney or accountant retained by it or acting on its behalf) not to, directly or indirectly, engage in any negotiations concerning, or provide any confidential information or data to, or have any discussions with, any Person relating to an Acquisition Proposal, or otherwise facilitate any effort or attempt to make or implement an Acquisition Proposal[.] . . . The Company agrees that it will immediately cease and cause to be terminated any existing activities, discussions or negotiations with any parties conducted heretofore with respect to any Acquisition Proposals. The Company agrees that it will take the necessary steps to promptly inform the individuals referred to in the first sentence hereof of the obligations undertaken in this Section 5.08.

40.    Also, the Company is obligated to promptly notify PacWest of any proposals received from other parties.  Section 5.08 of the Agreement states:

The Company agrees that it will notify Parent promptly, but in no event later than the next succeeding Business Day, if any such inquiries, proposals or offers are received by, any such information is requested from, or any such discussions or negotiations are sought to be initiated or continued with, any of its representatives, indicating, in connection with such notice, the name of such Person and the material terms and conditions of any proposal or offer and thereafter shall keep Parent informed, on a current basis, of the status and terms of any such proposals or offers and the status of any such discussions or negotiations.

41.    In addition to the above, the Agreement contains a "fiduciary out" clause allowing the Board to withdraw its approval of the Transaction under limited circumstances, and grants PacWest a "matching right" regarding any "Superior Proposal" made to the Company.  Section 5.06 of the Agreement states in part:

(ii) Notwithstanding anything to the contrary set forth in this Agreement, prior to the time, but not after, the Company Shareholder Approval contemplated by this Agreement is obtained, the Company Board may withhold, withdraw or adversely modify the Company

Board Recommendation or approve, recommend or otherwise declare advisable any Superior Proposal made to the Company after the date hereof that was not solicited, initiated, encouraged or facilitated in breach of this Agreement, if (A) an unsolicited bona fide written offer is made to the Company and is not withdrawn and the Company Board determines in good faith (after consultation with its financial advisor) that such Acquisition Proposal is a Superior Proposal, and (B) the Company Board determines in good faith, after consultation with outside counsel, that the failure to take such action would result in a violation of the directors' fiduciary duties under applicable Law; provided, however, that no such Company Change of Recommendation may be made until after (I) at least five (5) Business Days following Parent's receipt of notice from the Company advising that the Company Board intends to take such action and the basis therefor, including all necessary information under Section 5.08 and (II) the Company has negotiated in good faith to permit Parent to modify this Agreement during such five (5) Business Day period. In determining whether to make a Company Change of Recommendation, the Company Board shall take into account any changes to the terms of this Agreement proposed by Parent and any other information provided by Parent in response to such notice. Any material amendment to any Acquisition Proposal will be deemed to be a new Acquisition Proposal for purposes of this Section 5.06, including with respect to the notice period referred to in this Section 5.06.

42.   In locking up control of the Company in favor of PacWest, the Agreement contains a "termination fee" of $26.5 million which is due by the Company to PacWest if Defendants cause the Company to terminate the Agreement.

43.   In essence, as a result of the deal protection devices noted above, Defendants have locked up the Transaction and have precluded other bidders from making competing offers for the Company.

44.   Moreover, Defendants have entered into voting agreements that agree to vote Company shares in favor of the Transaction.

45.   Also, certain of the Company's high-ranking officers and directors will receive substantial benefits in the Transaction.  For example, PacWest has agreed to

9

provide consulting agreements with Defendants Rainer and Horton, as well as Karen Schoenbaum (the Executive Vice President and Chief Financial Officer of the Company).

**The Company Will Be Acquired For Inadequate Consideration**

46.     On April 27, 2017, the Company issued a press release.  The press release stated in relevant part:

> Los Angeles, CA, April 27, 2017 - CU Bancorp (NASDAQ: CUNB), the parent company of wholly owned California United Bank, today reported financial results for the first quarter of 2017.
>
> First Quarter 2017 Highlights
>
> • Net income available to common shareholders *increased to $7.5 million*, compared to $6.3 million in the first quarter of 2016
> • Total revenue *increased 10.4%* from the first quarter of 2016
> • Non-performing assets to total assets ratio remains very low at 0.02%; no past due loans over 30 days; net recoveries of $231 thousand
> • Return on tangible common equity of 11.87%, compared to 10.99% for the prior quarter
> • Efficiency ratio of 58%
> • Diluted earnings per share of $0.42
> • *Tangible book value per share increased to $14.52*, up $0.42 from prior quarter
> • *Total assets increased to $3.1 billion*, *up $404 million from the first quarter of 2016 and $149 million from the prior quarter*
> • *Total loans increased to $2.0 billion, up $177 million from the first quarter of 2016 and flat from the prior quarter*
> • *Total deposits increased to $2.8 billion, up $379 million or 16% from the first quarter of 2016 and $147 million or 6% from the prior quarter*
> • Non-interest bearing demand deposits were 54% of total deposits
> • Continued status as well capitalized, the highest regulatory category
> • Recognized as recipient of the 2016 Raymond James Community Bankers Cup and named a top 100 best-performing

community bank by S&P Global Market Intelligence. [Emphasis added].

47.    In this same press release, Defendant Rainer stated in relevant part:

"I'm very pleased to report CUB achieved record net income of $7.8 million and diluted earnings per share of $0.42 in the first quarter of 2017 […].   Return on average tangible common equity increased to 11.87%, the highest in Company history, and return on average assets of 0.97% marked the second highest in Company history. ***Total deposits increased by $147 million or 6% over the prior quarter, which amounts to 24% annualized; non-interest bearing deposits remain 54% of total deposits***."

"Net organic loan growth of $33 million was offset by pay downs in the acquired portfolio of $37 million; however, average loans increased by $70 million over the prior quarter, which led to a 3% increase in net interest income."

"The CUB team continues to focus on providing outstanding customer service through its relationship-based business banking model as we move forward towards our merger with PacWest." [Emphasis added].

48.    Here, the Board caused the Company to enter into the Agreement for inadequate consideration as the Company's value is beyond the offering price proposed.

## The Registration Statement Is False and Misleading As It Omits Material Information

49.    The Registration Statement omits certain information regarding the Transaction.   For example, the Registration Statement fails to include certain information regarding the Company's financial projections, PacWest's financial projections, and fails to provide the analyses performed by the Company's financial advisor, Keefe, Bruyette & Woods, Inc. ("KB&W"), in support of its fairness opinion.

50.    Moreover, the Registration Statement does not disclose the Company's financial projections, and also does not disclose PacWest's financial projections.

For example, as to KB&W's CUB Discounted Cash Flow Analysis, the Registration Statement does not disclose: (a) the estimated excess cash flow that the Company could potentially generate from 2017 to 2021; (b) the implied terminal value of the Company; (c) the assumed long-term earnings and asset growth rates of the Company; and (d) the inputs and assumptions regarding the discount rate range of 9.0% to 13.0%.

51.    In regard to KB&W's Forecasted *Pro Forma* Financial Impact Analysis, the Registration Statement does not disclose: (a) the closing balance sheet estimates as of December 31, 2017 for the Company and PacWest; (b) the assumed long-term earnings growth rates and *pro forma* assumptions provided by PacWest; and (c) PacWest's projected financial results used in the analysis.

52.    Further, in KB&W's Relative Contribution Analysis, there is no mention of the balance sheet and net income data for the Company and PacWest as of December 31, 2016.  And in KB&W's CUB Comparable Companies Analyses and PacWest Comparable Companies Analysis, there is no mention of the individual multiples and financial metrics for the companies observed by KB&W.

53.    In KB&W's Comparable M&A Transactions Analysis, the Registration Statement also does not disclose the individual multiples and financial metrics for the transactions observed by KB&W.  This information is material as it provides stockholders with a basis to project the future financial performance of a company, and also provides stockholders a better understanding of the financial analyses performed by the company's financial advisor.  The failure to provide this material information renders the Registration Statement false and misleading.

54.    In addition to all of the above, the Registration Statement fails to provide material information as to the potential conflicts of interest of the Company's officers and directors.  Specifically, the Registration Statement fails to provide the timing and nature of any and all communications regarding future employment and/or directorship of the Company's officers and directors.

55.    The Registration Statement fails to provide information concerning the background of the Transaction.  Plaintiff and the putative Class are entitled to a full and robust description of the process the directors used in coming to their decision to support the Transaction.   For example, the Registration Statement does not disclose the number of financial institutions identified by KB&W as potential merger partners in November 2016.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

56.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.    SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

58.    Defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

59.    Defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was

13

prepared, reviewed, and/or disseminated by Defendants.  The Registration Statement misrepresented and/or omitted material facts, including material information about the unfair sale process for the Company, the financial analyses performed by the Company's financial advisor.  Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

60.    The omissions and false and misleading statements in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to unitholders.

61.    By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

62.    Because of the false and misleading statements in the Registration Statement, Plaintiff and the putative Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure Defendants' misconduct is corrected.

## COUNT II

**Class Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

63.    Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

64.    The Individual Defendants acted as controlling persons of CU Bancorp within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of CU Bancorp and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the

14

power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

65.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Transaction. They were, thus, directly involved in the making of this document.

67.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants

68.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)    declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B)    declaring that the Registration Statement is materially false or misleading;

(C)    enjoining, preliminarily and permanently, the Transaction;

(D)    in the event that the Transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)    directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(F)    awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)    granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

//

//

//

16

1

2

Dated: June 12, 2017

3

**TOSTRUD LAW GROUP, P.C.**

4

By: */s/ Jon A. Tostrud*
  Jon A. Tostrud

5

1925 Century Park East
Suite 2100

6

Los Angeles, CA 90067
Telephone: (310) 278-2600

7

Facsimile: (310) 278-2640
jtostrud@tostrudlaw.com

8

Thomas J. McKenna

9

Gregory M. Egleston
**GAINEY McKENNA & EGLESTON**

10

440 Park Avenue South, 5th Floor
New York, NY 10016

11

Telephone: (212) 983-1300
Facsimile: (212) 983-0383

12

Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

13

***Attorneys for Plaintiff***

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

## CERTIFICATION OF NAMED PLAINTIFF

I, _MELVIN KLEIN_ ("Plaintiff") hereby retain the firm Gainey McKenna & Egleston and such co-counsel it deems appropriate to associate with, subject to their investigation, to pursue my claims on a contingent fee basis and for counsel to advance the costs of the case, with no attorneys fee owing except as may be awarded by the court at the conclusion of the matter and paid out of any recovery obtained and I also hereby declare the following as to the claims asserted under the law that:

Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

Plaintiff reviewed a copy of the complaint and is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

Plaintiff's transactions in **CU Bancorp. (CUNB)** security that is subject of this action during the Class Period are as follows:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
| --- | --- | --- | --- | --- |
| 440 | CUNB | B | 8/08/13 | 18.016 |
| 560 | CUNB | B | 8/08/13 | 18.02 |
| 100 | CUNB | B | 8/08/13 | 18.0575 |
| | | | | |
| | | | | |

Please list other transactions on a separate sheet of paper, if necessary.

Plaintiff has sought to serve as a class representative in the following cases within the last three years:

Plaintiff will not accept any payment serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _11_ day of _APRIL_, 2017

_MHK_
Signature

_MELVIN KLEIN_
Print Name (& Title if applicable)